**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIM FAULKNER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AKERS BIOSCIENCES, INC., JOHN J. GORMALLY, and GARY M. RAUCH,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tim Faulkner ("Plaintiff") individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Akers Biosciences, Inc. ("Akers" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased publicly traded Akers securities from May 15, 2017 through June 5, 2018, both dates inclusive ("Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company conducts business and maintains offices in this District.

5. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying PSLRA Certification, acquired Akers securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7. Defendant Akers, together with its subsidiaries, develops, manufactures, and supplies rapid screening and testing products designed to deliver healthcare information to healthcare providers and consumers in the United States, the People's Republic of China, and internationally. The Company is a New Jersey corporation with offices located in Ramsey, New Jersey. Akers securities trade on NASDAQ under the symbol "AKERS."

8. Defendant John J. Gormally ("Gormally") has been the Company's Chief Executive Officer ("CEO") since November 16, 2015.

9. Defendant Gary M. Rauch ("Rauch") has served as the Company's Vice President, Finance & Treasurer (Principal Financial Officer) during the Class Period.

10. Defendants Gormally and Rauch are herein referred to as "Individual Defendants."

11. Collectively, Defendant Akers and Individual Defendants are herein referred to as "Defendants."

12. Each of the Individual Defendants:

    a. directly participated in the management of the Company;

    b. was directly involved in the day-to-day operations of the Company at the highest levels;

    c. was privy to confidential proprietary information concerning the Company and its business and operations;

    d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

      f.      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

      g.      approved or ratified these statements in violation of the federal securities laws.

13. Akers is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Akers under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS
### Background

15. Dr. Raymond F. Akers, Jr., Ph.D. was a founder of the Company. He served in various capacities at the Company, including as Chief Scientific Director, Secretary, and a director.

16. On April 11, 2017, the Company filed a Form 10-K with the SEC, which provided its year-end financial results and position for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by Defendants Gormally and Rauch.

17. The 2016 10-K stated that the Company "identified a material weakness in [its] controls related to segregation of duties and other immaterial weaknesses in several areas of data management and documentation."

18. The 2016 10-K stated there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting.

**Defendants' False and Misleading Class Period Statements**

19. On May 15, 2017, the Company filed a Form 10-Q for the quarter ended March 31, 2017 (the "1Q 2017 10-Q") with the SEC, which provided the Company's first quarter 2017 financial results and position. The 1Q 2017 10-Q was signed by Defendants Gormally and Rauch. The 1Q 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gormally and Rauch attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20. The 1Q 2017 10-Q stated the Company's disclosure controls and procedures were effective. The 1Q 2017 10-Q also provided that there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting, stating in relevant part:

> *(b) Changes in Internal Control over Financial Reporting.*
>
> There were no changes in our internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during our most recently completed fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

21. On August 14, 2017, the Company filed a Form 10-Q for the quarter ended June 30, 2017 (the "2Q 2017 10-Q") with the SEC, which provided the Company's second quarter 2017 financial results and position. The 2Q 2017 10-Q was signed by Defendants Gormally and Rauch. The 2Q 2017 10-Q contained signed SOX certifications by Defendants Gormally and Rauch attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

22. The 2Q 2017 10-Q stated the Company's disclosure controls and procedures were effective. The 2Q 2017 10-Q also provided that there were no changes in internal control over

financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting, stating in relevant part:

> ***(b) Changes in Internal Control over Financial Reporting.***
>
> There were no changes in our internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during our most recently completed fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

23. On November 14, 2017, the Company filed a Form 10-Q for the quarter ended September 30, 2017 (the "3Q 2017 10-Q") with the SEC, which provided the Company's third quarter 2017 financial results and position. The 3Q 2017 10-Q was signed by Defendants Gormally and Rauch. The 3Q 2017 10-Q contained signed SOX certifications by Defendants Gormally and Rauch attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24. The 3Q 2017 10-Q stated the Company's disclosure controls and procedures were effective. The 3Q 2017 10-Q also provided that there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting, stating in relevant part:

> ***(b) Changes in Internal Control over Financial Reporting.***
>
> There were no changes in our internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during our most recently completed fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

25. On April 3, 2018, Akers filed a Form NT 10-K with the SEC, disclosing it was unable to timely file its Annual Report on Form 10-K for the period ended December 31, 2017 ("2017 10-K"). Specifically, the Company stated that it required "additional time to gather information and finalize its financial statements."

26.  That same day, the Company filed its 2017 10-K with the SEC, which provided the Company's year-end financial results and position. The 2017 10-K was signed by Defendants Gormally and Rauch. The 2017 10-K contained signed SOX certifications by Defendants Gormally and Rauch attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

27.  The 2017 10-K stated that the Company "identified a material weakness in our controls related to segregation of duties and other immaterial weaknesses in several areas of data management and documentation." The 2017 10-K also stated there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting.

28.  The 2017 10-K provided the Company's revenue for the relevant period:

*Revenue*

The Company's total revenue for the year ended December 31, 2017 was $3,929,527, a 33% increase compared to the same period in 2016. The table below presents a summary of our sales by product line:

| Product Line | Year Ended December 31, 2017 | Year Ended December 31, 2016 | Percent Change |
|---|---|---|---|
| Particle ImmunoFiltration Assay ("PIFA") | $ 2,232,684 | $ 2,577,148 | (13)% |
| MicroParticle Catalyzed Biosensor ("MPC") | 950,946 | 282,516 | 237% |
| Rapid Enzymatic Assay ("REA") | 133,848 | - | -% |
| Other | 562,049 | 97,498 | 476% |
| Product Revenue Total | $ 3,879,527 | $ 2,957,162 | 31% |
| License & Service Fees | 50,000 | 3,750 | 1,233% |
| Total Revenue | $ 3,929,527 | $ 2,960,912 | 33% |

29.  The 2017 10-K stated the following about the Company recognizing revenue:

(k) Revenue Recognition

In accordance with FASB ASC 605, the Company recognizes revenue when (i) persuasive evidence of a customer or distributor arrangement exists, (ii) a retailer, distributor or wholesaler receives the goods and

7

> acceptance occurs, (iii) the price is fixed or determinable, and (iv) the collectability of the revenue is reasonably assured. Subject to these criteria, the Company recognizes revenue from product sales when title passes to the customer based on shipping terms. The Company typically does not accept returns nor offer charge backs or rebates except for certain distributors. Revenue recorded is net of any discount, rebate or sales return. The accrual for estimated sales returns was $- as of December 31, 2017 and 2016.
>
> The Company implemented a standard dealer cost model during the year ended December 31, 2016 which includes a provision for rebates to the distributors under limited circumstances. The Company established an accrual of $126,471 and $41,120, which is a reduction of revenue as of December 31, 2017 and 2016. Accounts receivable will be reduced when the rebates are applied by the customer. The Company recognized $372,664 and $471,949 during the years ended December 31, 2017 and 2016 for rebates, which is included as a reduction of product revenue in the Consolidated Statement of Operations and Comprehensive Loss.
>
> License fee revenue is recognized on a straight-line basis over the term of the license agreement.
>
> When the Company enters into arrangements that contain more than one deliverable, the Company allocates revenue to the separate elements under the arrangement based on their relative selling prices in accordance with FASB ASC 605-25.

30.     The statements referenced in ¶¶19-29 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Akers was improperly recognizing revenue for the fiscal year ended December 31, 2017; (2) Akers had downplayed weaknesses in its internal controls over financial reporting and failed to disclose the true extent of those weaknesses; and (3) as a result, Defendants' statements about Akers' business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Begins to Emerge**

31.     On May 21, 2018, Akers disclosed in a Form 8-K filed with the SEC that it was unable to file its Form 10-Q with the SEC for the quarter ended March 31, 2018. Akers also disclosed that its continuing review of the "characterization of certain revenue recognition items . . . now includes certain transactions in previous quarters." The Form 8-K stated, in relevant part:

> As previously disclosed, the Company has been reviewing the characterization of certain revenue recognition items for the quarter ended March 31, 2018. As this review is continuing and now includes certain transactions in previous quarters, the Company is unable to file its 10-Q for the quarter ended March 31, 2018 today. Following the completion of its review, which cannot be estimated, the Company will file its 10-Q for the quarter ended March 31, 2018 and make a determination as to whether it will need to revise, correct or restate the reports for any previous quarter or fiscal year.

32.     On this news, shares of Akers fell $0.058 per share or over 8% to close at $0.599 per share on May 22, 2018, damaging investors.

33.     On May 29, 2018, before the market opened, Akers issued a press release stating that "Raymond F. Akers Jr., Ph.D has resigned as a director of the Company with immediate effect."

34.     On this news, shares of Akers fell $0.198 or over 33% to close at $0.391 per share on May 29, 2018.

35.     On June 1, 2018, the Company filed a Form 8-K with the SEC, stating that Raymond Akers "has not been fully cooperative" with the Company's review of certain revenue recognition items for prior quarters. The Form 8-K stated, in relevant part:

> **Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**
>
> On May 27, 2018, Raymond F. Akers, Jr., submitted his written resignation (the "Resignation Letter") from Akers Biosciences, Inc.'s (the "Company") board of directors (the "Board") effective immediately. Dr. Akers did not state in the

9

> Resignation Letter that he had any disagreement with the Company. Dr. Akers thereafter delivered a letter, dated May 30, 2018 (the "Disagreement Letter"), setting forth his disagreements with the Company. A copy of the Resignation Letter and the Disagreement Letter are attached hereto as Exhibit 17.1 and Exhibit 17.2 respectively.
>
> The Company believes that Dr. Akers resigned due to his significant differences with other members of the Board regarding the management of the Company, its accounting and business practices and its counsel.
>
> ***As previously disclosed the Company's audit committee of the Board has been reviewing certain revenue recognition items with respect to the first quarter of 2018, as well as previous quarters. The Company believes Dr. Akers has not been fully cooperative in connection with such review.***
>
> In accordance with the requirements of Item 5.02(a) of Current Report on Form 8-K, the Company has provided Dr. Akers with the opportunity to furnish the Company as promptly as possible with a letter addressed to the Company stating whether he agrees with the statements made by the Company in response to this Item 5.02 and, if not, stating the respects in which he does not agree.

(Emphasis added.)

36. That Form 8-K also contained a letter as an exhibit from Raymond Akers which stated that Dr. Akers "resigned from the Board of Directors due to significant differences regarding the policies and practices of the Board of Directors, accounting and business practices of Management, and new Counsel." The Form 8-K stated, in relevant part:

> Dear Sirs,
> I have resigned from the Board of Directors due to significant differences regarding the policies and practices of the Board of Directors, accounting and business practices of Management, and new Counsel. I believe this to be in the best interests of the Company, shareholders, and me.
> Very truly yours,
> Raymond F. Akers, Jr., Ph.D.
> Co-Founder

37. On June 5, 2018, the Company filed a Form 8-K/A with the SEC, which amended the Form 8-K filed with the SEC on June 1, 2018. The Form 8-K/A contained as an exhibit a letter on behalf of Raymond Akers, stating that the "8K regarding Ray is false, totally misleading[.]" The Form 8-K/A stated, in relevant part:

10

> On behalf of Ray Akers, we believe the language of the 8K regarding Ray is false, totally misleading, and such that will cause Ray to have to take corrective action. Ray is a whistleblower; the only reason there is an investigation regarding revenue recognition is because Ray refused to approve the 10K for 2017 and demanded an investigation. To say he is being "uncooperative" is utterly disingenuious and will not be tolerated.
>
> George Bochetto, Esq.
> Bochetto & Lentz, P.C.
> 1524 Locust Street
> Philadelphia, PA 19102
> (Ph) 215-735-3900
> (Fx) 215-735-2455
> www.bochettoandlentz.com

38. On this news, shares of Akers fell $0.025 or over 5% to close at $0.46 per share on June 6, 2018.

39. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Akers during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can

be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NASDAQ, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the

13

      Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

  (g)  Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

47. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

53. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

54. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

55. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

56. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

57. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

58. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

61. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

62. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

63. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 13, 2018                                  Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff