**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE AKERS BIOSCIENCES, INC., SECURITIES LITIGATION, | No.: 2:18-cv-10521-ES-CLW <br><br> <u>CLASS ACTION</u> <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** <br><br> Hon. Esther Salas |

# TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................1

II.     BACKGROUND ............................................................................3

        A.      Summary of the Claims.......................................................3
        B.      Procedural History...............................................................3
        C.      Settlement Discussions.........................................................4

III.    ARGUMENT...................................................................................5

        A.      The Settlement Should Be Finally Approved ......................5

                1.      Certification of the Class Pursuant to Fed. R. Civ. P. 23 is
                        Appropriate .................................................................5

                2.      Notice Was Provided in Accordance with the Court's
                        Preliminary Approval Order .......................................7

                3.      The Settlement Meets the *Girsh* Factors....................8

                        i.      Complexity, Expense, and Likely Duration of This
                                Litigation Warrant Approval of the Settlement...............8

                        ii.     The Class' Reaction to the Settlement Favors Approval13

                        iii.    The Stage of the Proceedings Supports Final Approval.15

                        iv.     The Risks of Establishing Liability Support Final
                                Approval ........................................................17

                        v.      The Risk in Establishing Damages Favors Final Approval
                                .......................................................................18

                        vi.     Risks of Maintaining Class Action Status Through Trial
                                Favor the Settlement......................................19

                        vii.    Defendants' Ability to Withstand Greater Judgment
                                Favors Final Approval ...................................20

                        viii.   The Range of Reasonableness of the Settlement Fund in
                                Light of the Best Possible Recovery and the Attendant
                                Risks of Litigation Favors Settlement ...........................21

                        ix.     The *Prudential* Factors Support Approval ....................21

x.    The Settlement is Reasonable In Light of The Likely Recovery Considering All Attendant Risks of Litigation ..........................................................................................23

4.    The Settlement Is Presumptively Fair, Reasonable, And Adequate Because It Is The Result of Arm's-Length Negotiations Supported By Counsel........................................24

B.    The Court Should Approve the Plan of Allocation............................26

IV.   **CONCLUSION** ............................................................................28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................7, 8

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ...............................................................................14

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014) ..........................................................................27

*Bredbenner v. Liberty Travel, Inc.*,
  No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)...................25

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989)........................................................................10

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .................................................................................24

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................................................8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ..............................................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ...........................................................................................10

*In re Atmel Corp. Derivative Litig.*,
  No. C 06-4592 JF (HRL), 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ..........25

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................. 16, 20, 27

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995) ............................................................. 13, 23

iv

*In re Citigroup Inc. Sec. Litig.*,
   No. 07 CIV. 9901 SHS, 2014 WL 2445714 (S.D.N.Y. May 30, 2014) .............18

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)..................27

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...........9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ....................................................... *passim*

*In re Genta Sec. Litig.*,
   No. CIV. A. 04-2123 JAG, 2008 WL 2229843 (D.N.J. May 28, 2008)...............9

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011).............................................................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004)..........................................................28

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................10

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .................................................... 20, 27

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012)........................................................16

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
   No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010)..............27

*In re Nat. Football League Players' Concussion Injury Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015) ...........................................................12

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) .................................................................5

*In re Nature's Sunshine Prod., Inc.*,
   No. 2:06-CV-267 TS, 2006 WL 2380965 (D. Utah Aug. 16, 2006) ..................26

*In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) .................................................................... 11, 18

*In re Ocean Power Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................25

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
  176 F.R.D. 158 (E.D. Pa. 1997) .............................................................. 14, 15

*In re Pfizer Inc. Sec. Litig.*,
  No. 4-CV-9866-LTS-HBP, 2014 WL 3291230 (S.D.N.Y. July 8, 2014)11, 12, 18

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ......................................................... *passim*

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y. 2014) ........................................................... 11, 12

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ..................................................... 19, 20, 24

*In re Vivendi Universal, S.A., Sec. Litig.*,
  No. 02 CIV. 5571 RJH, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ..................13

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ......................................................................16

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) .............................................................................10

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................26

*Lazy Oil Co. v. Wotco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997) .................................................................19

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .........26

*Pro v. Hertz Equip. Rental Corp.*,
  No. CIV.A. 06-3830 DMC, 2013 WL 3167736 (D.N.J. June 20, 2013) .............21

*Schuler v. Medicines Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)................16

*Serio v. Wachovia Sec., LLC*,
No. CIV.A. 06-4681(MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ...............15

*Slomovics v. All for a Dollar, Inc.*,
906 F. Supp. 146 (E.D.N.Y. 1995).......................................................................23

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d Cir. 1990) ................................................................................14

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................................27

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) .............................................................................24

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
899 F. Supp. 1297 (D.N.J. 1995).........................................................................17

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)..........25

## Rules

Fed. R. Civ. P. 23 .............................................................................. 1, 5, 6

## Other Authorities

*Manual for Complex Litigation (Third)* §30.42 (1995) ...........................................24

## I.      **INTRODUCTION**[1]

Lead Plaintiff John Papa ("Lead Plaintiff") on behalf of himself and the Class,[2] respectfully submits this memorandum in support of his motion for final approval of the proposed settlement.

The Settlement seeks to resolve this litigation in its entirety for a cash payment of $2,250,000.  If approved, the Settlement will completely dispose of this action.

To finally approve a settlement, courts must determine that it is "fair, reasonable, and adequate" to the class. Fed. R. Civ. P. 23(e). That is, courts must consider whether the Class is getting adequate consideration for the release – and here, they plainly do. The Settlement is an excellent result for the Class as it recovers over 21% of the Class' total damages. For cases with damages of less than $25 million, between 2009 and 2017, the average settlement of cases of this magnitude

---

[1] Unless otherwise defined herein, all capitalized terms herein take the meanings provided in the Stipulation and Agreement of Settlement dated March 8, 2019 (the "Settlement Stipulation") (Dkt. No. 35).

[2] The "Class" is defined to include all persons and entities other than Defendants Akers Biosciences, Inc. ("Akers" or the "Company"), John J. Gormally, and Gary M. Rauch and their affiliates who purchased publicly traded Akers common stock from May 15, 2017 through June 5, 2018, both dates inclusive. The Class excludes Defendants and their immediate families, the officers and directors of Akers at all relevant times, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class are those who file valid and timely requests for exclusion pursuant to the Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 40).

1

was 18.6% recovery of damages and for 2018 was 14.1% of damages. Accordingly, the Settlement is an outstanding result for Akers investors.  If this case were to continue, it is unlikely that a better result could be achieved. Even after substantial motion practice, most cases do not settle for near this recovery. The Settlement avoids the risk of continue litigation and provides Akers shareholders with an excellent, guaranteed and immediate recovery.

The Court must also determine if Lead Plaintiff has adequately established a formula to distribute the Settlement. Courts approve plans of allocation if they are fair, reasonable, and adequate. Here, the Plan of Allocation was formulated by experienced counsel in consultation with a damages consultant; it comports with applicable legal principles, and in no way favors Lead Plaintiff over other members of the Class. Thus, the Court should approve the Plan of Allocation.

Pursuant to the Preliminary Approval Order,109,573 copies of the Court-approved Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Claim Form") were mailed to potential Class members. *See* Declaration of Josephine Bravata Concerning: (A) The Mailing Of The Notice And Claim Form; (B) Publication Of The Summary Notice; and (C) Report On Requests For Exclusion And Objections ("Bravata Decl."), Exhibit 2 to the Declaration of Laurence M. Rosen in Support of Motions for: (1) Final Approval of Proposed Settlement; and (2) Award of Attorneys' Fees, Reimbursement of

Expenses, and Award to Lead Plaintiff ("Rosen Decl."), ¶7. Additionally, the Claims Administrator, Strategic Claims Services ("SCS") also emailed the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") to 6,422 Settlement Class Members for whom SCS was able to obtain email addresses. *Id.*, ¶7 fn2. Requests for exclusion and objections to the Settlement are due October 18, 2019.  As of the date of this writing, there have been four requests for exclusion, no objections to any aspect of the Settlement, and 1,438 claims filed. *Id.*, at ¶¶13-15.

## II.   BACKGROUND

### A.   Summary of the Claims

This is a securities class action brought on behalf of investors who bought Akers common stock from May 15, 2017 to June 5, 2018, both dates inclusive. The complaint asserts claims under violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") concerning that Defendants made misrepresentations and/or omissions of material fact in Akers' public statements concerning its financial statements, including the Company's amount of revenue and losses, and that the Company had material weaknesses in its internal controls over financial reporting.

### B.   Procedural History

Rosen Law commenced this action on June 13, 2018, styled as *Faulkner v. Akers Biosciences, Inc. et. al.,* Case No. 18-cv-10521 (Dkt. No. 1). A related action, *Gleason v. Akers Biosciences, Inc., et al.*, Case No. 18-cv-10805, was filed on June

3

20, 2018. After extensive briefing and opposition on motions to consolidate the related actions and appoint lead plaintiff and lead counsel, on November 21, 2018, the Court consolidated the related actions under the caption *In re Akers Biosciences, Inc. Securities Litigation*, No. 2:18-cv-10521 (D.N.J), and appointed John Papa as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. (Dkt. No. 28).

On December 11, 2018, the Court granted the Parties' stipulation settling a schedule for the filing of an amended complaint and Defendants' response thereto. (Dkt. No. 30). According to the stipulated schedule, Lead Plaintiff had until January 15, 2019 to file his amended complaint. Lead Plaintiff had carried out an investigation and was drafting the amended complaint. Five days prior to the deadline, however, the Parties reached an agreement to settle this action in principle.

**C.    Settlement Discussions**

On January 10, 2019, the Parties engaged in a full-day mediation session with Jed Melnick, Esq. of JAMS, a nationally-recognized mediator. Prior to the mediation, the Parties had the benefit of exchanging detailed mediation statements which assisted counsel to evaluate the strengths and weaknesses of the case. With the assistance of Mr. Melnick, the arm's-length negotiations were successful and a settlement in principle was reached. The Declaration of Jed Melnick, attached to the

4

Rosen Decl. as Exhibit 1, provides Mr. Melnick's perspective of the Settlement and the process by which the Settlement was reached.

On March 8, 2019, Lead Plaintiff filed the motion for preliminary approval of the settlement (Dkt. No. 36), which was granted on July 3, 2019 (Dkt. No. 40).

## III.   ARGUMENT

### A.   The Settlement Should Be Finally Approved

#### 1.   Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate

In the Preliminary Approval Order, the Court preliminarily certified a Class set out in footnote 2, above (Dkt. No. 40, ¶2). As described in Lead Plaintiff's memorandum in support of preliminary approval of the Settlement, and in this memorandum, certification of the Class under Fed. R. Civ. P. 23 is appropriate.  No changes have occurred since the issuance of the Preliminary Approval Order. Thus, the Court should finally certify this as a class action for purposes of the Settlement.

*The Class Meets the Requirements of Rule 23(a)*

First, as to numerosity, the Class is sufficiently numerous, as the Claims Administrator mailed 109,573 Notices and Claim Forms to potential Settlement Class Members and there have been 1,438 claims received to date. Bravata Decl. ¶¶7, 15. This is more than sufficient to satisfy numerosity.  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016), as

5

amended (May 2, 2016) ("numerosity is generally satisfied if there are more than 40 class members").

Second, all of the conduct alleged in the complaint was common to all members of the Class. All members of the Class purchased Akers common stock during the Class Period. Therefore, all of Defendants' alleged misrepresentations and omissions were made to each member of the Class.

Third, all of the Class' claims are interrelated, and Lead Plaintiff's claims are typical of those of the rest of the class. All Class Members suffered losses because they bought Akers common stock at artificially inflated prices and were damaged when the true facts were revealed.

Fourth, Lead Plaintiff is an adequate representative of the Class. Lead Plaintiff has no conflicts with the other Class Members and retained counsel with vast experience in the prosecution of securities class actions. As detailed in the Declaration of John Papa, attached as Exhibit 4 to the Rosen Decl., Mr. Papa has been actively involved in the case, maintaining regular communication with his counsel. Due to Lead Plaintiff's diligence and retention of experienced counsel, his representation is adequate.

### *The Class Meets the Requirements of Rule 23(b)(3)*

Rule 23(b)(3) permits class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual

question and a class action is superior to other available means of adjudication. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here, as it is in most securities class actions. The root of the class action - whether Defendants' publicly disseminated press releases and SEC filings omitted and/or misrepresented material facts - is the central issue and predominates over any theoretical individual issue that may arise. Additionally, the class action mechanism is the best method of resolving this suit. Since the controversy for each class member is identical, adjudicating in one suit and one forum is the most economical means of resolving this matter. Moreover, most of the Class Members' damages are too small to make it feasible to incur substantial litigation costs that would exceed any potential recovery.

### 2. Notice Was Provided in Accordance with the Court's Preliminary Approval Order

Lead Plaintiff proposed to provide notice to the class by either (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses or (b) causing the Notice and Claim Form, if no email address could be obtained, to be mailed, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator (Preliminary Approval Order ¶13). The Summary Notice was also disseminated on *Globe Newswire* and printed once on the *Investor's Business Daily*, (*id.*) ¶ 17). Lead Plaintiff has fully complied

7

with these requirements. Bravata Decl. ¶¶4-10. In addition, SCS established a website for the Settlement and maintains a toll-free number for investors to obtain more information about the Settlement. *Id*., ¶¶11-12. Accordingly, the Notice program was sufficient.

### 3.  The Settlement Meets the *Girsh* Factors

To determine whether a proposed class action settlement is fair, reasonable, and adequate, the Third Circuit identified nine factors for district courts to consider in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). They are: " (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . ..". *Id.* at 157.

### i.  Complexity, Expense, and Likely Duration of This Litigation Warrant Approval of the Settlement

This *Girsh* factor concerns "the probable costs, in both time and money, of continued litigation….By measuring the costs of continuing on the adversarial path,

a court can gauge the benefit of settling the claim amicably." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995).

Courts throughout the Country recognize that securities class actions are exceptionally complex, lengthy, and risky. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) ("A securities case, by its very nature, is a complex animal") (internal quotations omitted); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) ("federal courts […] have long recognized that such litigation is notably difficult and notoriously uncertain") (internal quotations omitted); *In re Genta Sec. Litig.*, No. CIV. A. 04-2123 JAG, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive.").

If the Settlement is not approved, Lead Plaintiff would face difficult challenges:

**Defeating a Motion to Dismiss:** While Lead Plaintiff believed that his case was strong based on the research and investigation conducted in the preparation of the amended complaint, he remains cognizant of the substantial risk posed to the Settling Class in continuing the action including surviving an anticipated motion to dismiss. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *In re Heritage*

*Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005). Although the amended complaint would have to plead all elements of a securities class action – (1) a misstatement or an omission of material fact ("falsity"); (2) made with scienter; (3) made in connection with the purchase and sale of security; (4) transaction and loss causation; and (5) economic loss. *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 251–52 (3d Cir. 2009) – the most challenging elements to plead would be scienter and loss causation. Without the benefit of discovery, Lead Plaintiff would have to show that Defendants knowingly made their materially misleading misstatements regarding the Company's financial statements and internal controls. Moreover, Lead Plaintiff would have to plead the connection of the corrective disclosures with the movement of Akers' stock price.

**Certifying a Class**: To recover, Lead Plaintiff must show that he relied on Defendants' false statements.  It is legally impossible to provide direct reliance on a classwide basis. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014). Lead Plaintiff is entitled to a presumption of reliance, however, if he shows that Akers securities traded in an efficient market. *Id.*

Only large, closely-followed companies trade on efficient markets. *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989). While most classes involving common stock are certified, there is no guarantee that this action would be certified. Not only would Lead Plaintiff have to demonstrate that Akers' securities traded in

an efficient market, but he will also need to show that he is an appropriate class representative.

Expert testimony is virtually a prerequisite to show market efficiency. *In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*, 251 F.R.D. 656, 664 (D. Utah 2008) ("Defendants could have, and should have, provided an expert opinion of their own if they sought to challenge Dr. Hakala's conclusions"). This expert would likely cost at least $100,000. Rosen Decl. ¶25. The Settlement avoids the risk that the Court and/or a jury would find that Akers common stock did not trade in an efficient market and deny class certification.

**Experts:** In addition, Lead Plaintiff would also have to retain experts to testify on loss causation and damages. *In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP, 2014 WL 3291230, at *3 (S.D.N.Y. July 8, 2014), vacated on other grounds, 819 F.3d 642 (2d Cir. 2016) (granting summary judgment because "Plaintiffs' failure to proffer admissible [expert] loss causation and damages evidence is fatal to Plaintiffs' claims."). Given the nature of the action and the misleading financial statements, Lead Plaintiff would also have to retain experts on auditing. *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 259 (S.D.N.Y. 2014) (granting summary judgment because defendants' auditing expert was not rebutted by any of plaintiffs' experts). Based on Lead Counsel's experience, these experts would cost at least several hundred thousand dollars.  Rosen Decl. ¶26.

11

**Summary Judgement:** If Lead Plaintiff was able to defeat Defendants' anticipated motion to dismiss and successfully certify a class, he would face the hurdle of summary judgment, which is no easy feat. First, experts are both necessary and vulnerable to *Daubert* challenges. *See Pfizer* and *Puda Coal*, *supra*. Any successful *Daubert* motion against a critical expert would leave Lead Plaintiff unable to withstand summary judgment. Second, Lead Plaintiff would not survive summary judgment if he were unable to collect the evidence needed to prove his case.

**Winning at Trial:** If Lead Plaintiff survived summary judgment, the Parties would try the case at great cost. Because of inevitably conflicting expert testimony on market efficiency, loss causation, and damages, the trial would in some measure be a battle of the experts. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 393 (E.D. Pa. 2015) ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials [and] divergent expert testimony leads inevitably to a battle of the experts.") (internal quotations omitted).

**Surviving Post-Trial Motions and Appeals**: Even if Lead Plaintiff were successful at trial, it would not necessarily be the end of litigation. Then, post-trial

motions and the inevitable appeals would occur. There is no guarantee that Lead Plaintiff's efforts would result in any recovery for the Class, let alone one as favorable as the Settlement, but it is guaranteed that it would be years before the Class saw any recovery. *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("[I]n a case of this complexity, the end of that road might be miles and years away."). As notable examples, in a securities class action filed in 2002, plaintiffs won a favorable jury verdict in 2009 and a favorable judgment in 2013, only for the Seventh Circuit in 2015 to vacate and remand for a new trial primarily on the issue of loss causation. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 412 (7th Cir. 2015); *See also In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012).

Even if Lead Plaintiff won the trial, seeing this case through to a verdict would take years and potentially millions of dollars. Ultimately, the expenses will in all likelihood be greater than Lead Plaintiff's maximum damages.  Accordingly, this factor strongly supports approval. The Class' Reaction to the Settlement Favors Approval

The second *Girsh* factor "gauge[s] whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). Case law in this Circuit establishes that a relatively low objection rate supports approval of a proposed settlement. *See E.g., Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) (holding that the absence of, or a small number of objections, is strong evidence that the settlement is fair and reasonable); *see also In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) (holding that "relatively low objection rate militates strongly in favor of approval of the settlement").

Here, 109,573 Notices and Claim Forms were mailed out to potential class members. Bravata Decl. ¶7. The deadline to object to or to request exclusion from the Settlement is October 18, 2019. *Id.* ¶¶13-14. There have been no objections to any aspect of the Settlement. *Id.* ¶14. To date, there have been only four requests for exclusion. *Id.* ¶13. None of the exclusion requests gave a reason for the request. One of those requests comes from Sarah Gomez who has no recognized loss as she sold all of her Akers shares prior to May 21, 2018, a cutoff deadline in the Plan of Allocation. The request from Kevin Sills accounted for 715 Akers shares remaining at the end of the Class Period. The request from Ka Fung accounted for 12,000 Akers shares purchased during the Class Period. And the request from Garrett Cook is

14

comprised of shares that were in-and-out at a profit and appear to be about 3,386 shares purchased during and held through the Class Period. *See* Bravata Decl., ¶13, Ex. D.[3] SCS has received 1,438 Claims Forms. The deadline for submitted a Claim Form was October 9, 2019. *Id.* ¶15.

The fact that very few exclusion requests and no objections were submitted supports final approval of this Settlement. *Serio v. Wachovia Sec., LLC*, No. CIV.A. 06-4681(MF), 2009 WL 900167, at *7 (D.N.J. Mar. 31, 2009) ("the low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair."); *In re Orthopedic Bone Screw Products Liability Litigation*, 176 F.R.D. at 185 (holding that "relatively low objection rate militates strongly in favor of approval of the settlement"). Accordingly, the Class's reaction supports approval.

### ii.   The Stage of the Proceedings Supports Final Approval

The goal of the third *Girsh* factor is to "capture[] the degree of case development that class counsel accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (c*iting General Motors,* 55 F.3d at 813). Courts in this Circuit routinely

---

[3] If Lead Plaintiff receives any objections or exclusions prior to the October 18, 2019 deadline, Lead Plaintiff will address them in his reply papers in support of final approval.

approve class action settlement before the commencement of formal discovery. *See, e.g., Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (approving settlement prior to discovery because of counsel's investigation); *In re In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 483 (D.N.J. 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases"); *Scalfani v. Misonix, Inc., et al.,* Case No. 2:16-cv-05218-ADS-AST (E.D.N.Y.)(Dkt. No. 36) (granting final approval in class action that settled before filing of amended complaint or a motion to dismiss); *Perez v. Izea, Inc., et al.,* Case No. 2:18-cv-02784-SVW-GJS (C.D.Cal.) (Dkt. No. 50) (same).

There is no doubt that Lead Plaintiff and his counsel had a sufficient understanding of the claims and defenses in this action. In securities class actions governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), as this case is, discovery is stayed until after a complaint survives a motion to dismiss. Hence, prior to entering into this Settlement, Lead Counsel engaged in extensive investigation to file a complaint and began drafting an amended complaint, with the assistance of further research and investigation, that Lead Plaintiff believed would

meet the heightened pleading requirements of the PSLRA.  Although no motion to dismiss was filed at the time of the Parties agreed to the Settlement, Lead Plaintiff did have the benefit of exchanging detailed mediation statements which allowed him to evaluate Defendants' potential defense they could advance at trial. Accordingly, at the time that the Settlement was reached, Lead Plaintiff was armed with the strengths and potential weaknesses in his case as different stages of litigation progressed and was fully informed upon reaching this Settlement. Furthermore, according to the mediator, Jed Melnick, the Settlement was considered a positive outcome for Lead Plaintiff and the Class. Melnick Decl., ¶16, Exhibit 1 to Rosen Decl.

This factor weighs in favor of granting approval of the Settlement.

### iii.    The Risks of Establishing Liability Support Final Approval

Under this *Girsh* factor, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. In complex cases, "[t]he risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995).

Lead Plaintiff faced several obstacles if this case progressed as discussed above. Beyond these risks, even if Lead Plaintiff survived a motion to dismiss,

overcame *Daubert* challenges to his experts, survived summary judgment, and prevailed on liability and damages at trial, Defendants would likely appeal the verdict, leading to greater expenses, and further delays. This Settlement allows the Class to recover real cash promptly without incurring additional risk or costs, including the risk that Lead Plaintiff might recover nothing, or that the costs of litigation become greater than the maximum possible damages. Indeed, "much of the value of a settlement lies in the ability to make funds available promptly." *In re Citigroup Inc. Sec. Litig.*, No. 07 CIV. 9901 SHS, 2014 WL 2445714, at *2 (S.D.N.Y. May 30, 2014). The immediate, guaranteed outcome for Akers' investors supports approval of the Settlement.

### iv.    The Risk in Establishing Damages Favors Final Approval

Even if Lead Plaintiff established liability, he faced substantial risks in proving damages. Defendants would continue to argue that there was no loss causation; that is, some or all of Class members' losses could not be attributed to the conduct alleged in the complaint. Lead Plaintiff would then have to engage an expert to testify on this point. *Pfizer*, 2014 WL 3291230, at *3 (granting summary judgment because plaintiffs failed to present expert evidence on causation); *In re Nature's Sunshine Product's Inc.*, 251 F.R.D. at 664 (noting that to challenge expert testimony on issue on which movant bore the burden, non-movant "could have, and should have", presented an expert opinion of its own).

18

"[C]ourts have recognized the need for compromise where divergent testimony would render the litigation an expensive and complicated 'battle of experts.'" *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997). Experts introduce numerous risks and difficulties. Defendants would undoubtedly move to exclude Lead Plaintiff's expert under *Daubert*. Even if Lead Plaintiff's expert survived a *Daubert* motion, at trial the loss causation assessments of Lead Plaintiff's and Defendants' experts would be sure to vary substantially. Thus, in the end, loss causation would be reduced to a "battle of experts." The reaction of a jury to such competing expert testimony is highly unpredictable. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003) (competing expert opinions add uncertainty as to how much money, if any, the class might recover at trial).

Moreover, Defendants would contest Lead Plaintiff's damages calculation, contending that damages are less than Lead Plaintiff's calculation, or even zero. Thus, there was substantial risk that the amount of damages recoverable at trial would be significantly reduced.

### v.   Risks of Maintaining Class Action Status Through Trial Favor the Settlement

The risk of securing class certification, and maintaining it through trial, likewise supports approval. Lead Plaintiff had not yet moved for class certification at the time of the Settlement. As shown above, to demonstrate entitlement to class treatment, Lead Plaintiff would have to demonstrate through expert testimony that

Akers common stock traded on an efficient market. This obstacle could have prevented class members from recovering from their losses in Akers as a result of the alleged fraud. Further, Defendants would undoubtedly seize on any purported errors in Lead Plaintiff's experts' reports to either strike them as unreliable under *Daubert*, precluding certification, or to impeach them. Accordingly, while still expected, class certification can in no way be guaranteed in this case. The risk that the Court would deny class certification further supports the settlement. *See Rent-Way*, 305 F. Supp. 2d at 506.

### vi. Defendants' Ability to Withstand Greater Judgment Favors Final Approval

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240; *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) (defendants' inability to pay a greater sum would support approval of settlement). The answer is no.

The Settlement is funded by Aker's dwindling D&O insurance policy, which would be further depleted if the litigation were to continue, it is unlikely that Lead Plaintiff would be able to obtain further assets to fund a settlement. If the Settlement was not reached, Lead Plaintiff would potentially have to seek additional funds from the individual defendants would be a costly enterprise and not necessarily a fruitful one.

### vii.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation Favors Settlement

These factors inquire "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Pro v. Hertz Equip. Rental Corp.*, No. CIV.A. 06-3830 DMC, 2013 WL 3167736, at *5 (D.N.J. June 20, 2013) (*quoting   Prudential,* 148 F.3d at 322). According to Cornerstone Research, in 2018, cases with damages of less than $25 million settled for a median of 14.1% of total maximum estimated damages and between 2009 and 2017 the average settlement of similar sized cases was 18.6% of damages.[4] The Settlement of $2,250,000, against maximum damages of about $10.5 million, recovers over 21% of maximum estimated damages – well above the median recovery for settlements of this size.

### viii.   The *Prudential* Factors Support Approval

The Court should also consider whether the Settlement meets factors set out in *Prudential*, 148 F.3d at 323. The *Prudential* factors relevant to this case are whether class members may opt out of the settlement (they can) and whether the procedure for processing individual claims is fair and reasonable. *Id.* at 323–24.[5]

---

[4] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis. (Last accessed on October 11, 2019).

[5] The majority of the *Prudential* factors are irrelevant here (just as they were irrelevant in *Prudential*, 148 F.3d at 323-24). Here, there were no individual lawsuits

Claim procedures in securities class actions are standardized. As in every case, Class Members here must fill out a form setting out their mailing address and personal identifying information (either a Social Security Number or Tax Identification Number), and their transactions in Akers common stock. It is necessary to ask Class Members to submit claims because there is no central repository of the ultimate beneficial owners of Akers securities transactions. Only Class Members know who they are; they must therefore submit claims.

The claims procedures also require Class Members to submit proof of their transactions in Akers common stock. In Lead Counsel's experience, unfortunately there are fraudulent claims in many settlements. Often, these claims, if approved, would have recognized losses of thousands of dollars. Requiring proof of transactions ensures that the Claims Administrator can verify suspicious account statements with the brokerage firms at which the accounts are purportedly held, ensuring that the settlement is not dissipated in paying fraudulent claims.

---

filed. Thus, there has been no experience in adjudicating individual actions, nor will there ever be. Scientific knowledge as understood in *Prudential* is not relevant here. The extent of discovery on the merits is addressed above in response to *Girsh* factor (3). There are no other classes, subclasses, or claimants. In this case, approval of the Settlement does not depend on approval of attorneys' fees. If the Court believes attorneys' fees requested are too high, it can just award a smaller amount in attorneys' fees and does not need to deny approval of the Settlement. Whether attorneys' fees are reasonable, a *Prudential* factor, is therefore irrelevant. *Id.* at 323.

**ix.    The Settlement is Reasonable In Light of The Likely Recovery Considering All Attendant Risks of Litigation**

As is the case in nearly all securities class actions, there is a difference between the maximum possible recovery and the likely recovery considering the attendant risks of litigation. Lead Plaintiff here faced substantial risks in proving both liability and damages. Lead Plaintiff may well have recovered a smaller amount than the Settlement provides or even nothing had the case proceeded. Even if Lead Plaintiff was victorious at trial, Defendants would appeal. Accordingly, any future recovery would be highly uncertain and would take years to come to fruition. By contrast, the Settlement confers an immediate and substantial benefit upon injured Class Members. *See Chambers*, 912 F. Supp. at 837; *Prudential*, 148 F.3d at 318 (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"); *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class").

Furthermore, considering that the Settlement recovers a large percentage of damages, it is unlikely that Lead Plaintiff would have obtained a greater result if litigation continued. The best outcome would have been to recover a similar sized settlement, but it would have been after substantial time, expenses, and resources had been expended. The Settlement delivers a considerable and immediate benefit

23

for Akers shareholders. For all of these reasons, the Settlement should be approved as fair, reasonable and adequate.

### 4. The Settlement Is Presumptively Fair, Reasonable, And Adequate Because It Is The Result of Arm's-Length Negotiations Supported By Counsel

A proposed class action settlement is considered presumptively fair, where, as here, the parties, through capable counsel, have engaged in arm's-length negotiations. *See, e.g.*, *General Motors*, 55 F.3d at 785; *Manual for Complex Litigation (Third)* §30.42 (1995)(a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery"). Indeed, it is "appropriate" to give "substantial weight to the recommendations of experienced attorneys" who have engaged in arm's-length negotiations. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Rent-Way*, 305 F. Supp. 2d at 509 (lead counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight.").

There is a presumption of fairness when a settlement is reached with the assistance of a mediator. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Ocean Power*

24

*Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) (independent mediator for settlement discussions "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.")(*citing Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011); *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (mediator's participation "weighs considerably" against collusiveness).

Here, the Parties engaged in a mediation session with Jed Melnick of JAMS. With the assistance of Mr. Melnick, the Parties navigated many obstacles during the negotiations, ultimately arriving at this Settlement. In his declaration, Mr. Melnick supports the fairness of the mediation process and the outcome of the Settlement itself. *See* Exhibit 1 to Rosen Decl.

Moreover, Lead Counsel is highly experienced in the area securities litigation. *See* Rosen Law's firm resume attached as Exhibit A to the Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl."), Exhibit 3 to the Rosen Decl. The quality of Rosen Law's work and knowledge has been recognized by courts in this District and throughout the country. *See, e.g., Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation");

*Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at \*3 (C.D. Cal. Aug. 19, 2014)("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *In re Nature's Sunshine Prod., Inc.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at \*2 (D. Utah Aug. 16, 2006) (Rosen Law is "qualified, experienced and able to vigorously conduct the proposed litigation.").

The Settlement was not entered into lightly. Lead Counsel was fully able to understand the strengths and weaknesses of Lead Plaintiff's claims, Defendants' defenses, and the risks of ongoing litigation. The recovery for the Class provides Class Members with a significant monetary payment when viewed either as a percentage of damages. Compromise at this stage in the litigation will best enable the Class to benefit from the litigation while incurring a minimum of expenses. Accordingly, the Settlement should be finally approved given the nature of the process to reach a conclusion.

## B.    The Court Should Approve the Plan of Allocation

The Notice contains the Plan of Allocation of settlement proceeds, detailing how the Settlement proceeds are to be divided among claiming Class Members. The

26

"[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (*quoting Ikon,* 194 F.R.D. at 184); *see also Cendant*, 264 F.3d at 248.

Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 328 (3d Cir. 2011). "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014); *see also In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007), 2007 WL 4225828, at *5 (approving plan because it was "rational and consistent with Lead Plaintiffs' theory of the case.").

The Plan of Allocation, which is fully described in the Long Notice, was formulated by Lead Counsel in consultation with an independent damages expert with the goal of reimbursing Class members in fair and reasonable manner. Rosen Decl. ¶¶20-22. The Plan of Allocation employs accepted loss causation principles

27

that recognize loss based on whether a class member held shares on the relevant dates when corrective disclosures caused a decline in Akers' common stock share price.

Lead Counsel believes the Plan of Allocation fairly compensates Class Members, and this Court should approve it. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis."). Accordingly, the Plan of Allocation is fair, reasonable and adequate and, warrants the Court's approval.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant final approval to the proposed Settlement and the Plan of Allocation.

Dated: October 11, 2019                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>/s/ Laurence M. Rosen</u>
Laurence M. Rosen
609 W. South Orange Avenue
Suite 2P
South Orange, NJ 07079
Telephone: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

and

Phillip Kim (admitted *pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*Lead Counsel for Lead Plaintiff and
the proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of October, 2019 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Laurence M. Rosen*
Laurence M. Rosen
